IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF NORTH CAROLINA
(Charlotte Division)

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| **BALLANTYNE BRANDS, LLC,** a Delaware limited liability company, | ) ) ) | Case No. 19-30083 |
| Debtor. | ) ) | |
| In re: | ) | Chapter 11 |
| | ) | |
| **BALLANTYNE BRANDS, LLC,** a North Carolina limited liability company, | ) ) ) | Case No. 19-30084 |
| | ) | (Jointly Administered) |
| Debtor. | ) | |

## JOINT DISCLOSURE STATEMENT

Dated:  Charlotte, North Carolina
        May 17, 2019

Moon Wright & Houston, PLLC
Richard S. Wright (Bar No. 24622)
121 West Trade Street, Suite 1950
Charlotte, North Carolina 28202
Telephone: (704) 944-6560
Facsimile:  (704) 944-0380
*Counsel for the Debtors*

# ARTICLE I
# INTRODUCTION AND OVERVIEW

No representations concerning the Debtors, their businesses, or future operations, other than those specifically set forth herein, have been authorized by the Debtors.

**A.    GENERAL**

On January 18, 2019, Ballantyne Brands, LLC, a Delaware limited liability company and Ballantyne Brands, LLC, a North Carolina limited liability company (the "Debtors") filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code, 11 U.S.C. § 101 *et seq*. (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Western District of North Carolina (the "Bankruptcy Court").  The Debtors continue in possession of their properties and the management of their businesses as a "debtors in possession" pursuant to sections 1107 and 1108 of the Bankruptcy Code. The Honorable J. Craig Whitley, United States Bankruptcy Judge, has presided over both chapter 11 cases (jointly, the "Chapter 11 Cases") since their inception.

Contemporaneously herewith, the Debtors have filed a Joint Plan of Liquidation (the "Plan"). The Plan sets forth the proposed reorganization of the Debtors' chapter 11 estates (the "Estates") and the distribution of recoveries to creditors (collectively, the "Creditors") of the Estates.  A copy of the Plan is attached as <u>Exhibit A</u> to this Joint Disclosure Statement (the "Disclosure Statement").

Pursuant to section 1126 of the Bankruptcy Code, the Debtors are soliciting acceptances of the Plan from the classes of Claims entitled to vote on the Plan.  This Disclosure Statement is submitted pursuant to section 1125 of the Bankruptcy Code in order to provide information of the kind necessary to enable a hypothetical reasonable investor to make an informed judgment in the exercise of his/her/its right to vote on the Plan.

**B.    PURPOSE OF DISCLOSURE STATEMENT**

The Debtors provide this Disclosure Statement in order to permit eligible parties to make an informed decision in voting to accept or reject the Plan.  The Disclosure Statement is presented to all Creditors in order to satisfy the requirements of section 1125 of the Bankruptcy Code.  Section 1125 requires a disclosure statement to provide information sufficient to enable a hypothetical and reasonable investor, typical of the Creditors, to make an informed judgment whether to accept or reject the Plan. This Disclosure Statement may not be relied upon for any purpose other than that described above.  This Disclosure Statement and the Plan are an integral package, and they must be considered together for the reader to be adequately informed.  No representations concerning the Debtors or their property are authorized by the Debtors other than as set forth in this Disclosure Statement.  Any representations or inducements made to secure your acceptance of the Plan other than as contained in this Disclosure Statement should not be relied upon by you in arriving at your decision, and such additional representations and inducements should be reported to counsel for the Debtors, who shall in turn deliver such information to the Bankruptcy Court for such action as may be appropriate.

The information contained in this Disclosure Statement, including any exhibits attached hereto, has not been subject to an audit or independent review.  Accordingly, the Debtors are unable to warrant or represent that the information concerning the Debtors or their financial conditions is accurate or complete. Any projected information contained in this Disclosure Statement has been presented for illustrative purposes only.  Because of the uncertainty and risk factors involved, the Debtors' actual results may not be as projected.

Although an effort has been made to be as accurate as possible under the circumstances, the Debtors do not warrant or represent that the information contained in this Disclosure Statement is correct. The Disclosure Statement contains only a summary of the Plan. Each creditor who is entitled to vote on the Plan is urged to review the Plan prior to casting its vote.

The statements contained in this Disclosure Statement are made as of the date of the Disclosure Statement unless another time is specified. The delivery of this Disclosure Statement shall not under any circumstances create an implication that there has not been any change in the facts set forth since the date of the Disclosure Statement. Schedules of the assets and liabilities of the Debtors as of the Petition Date (collectively, as may be amended from time to time, the "Schedules") are on file with the Clerk of the Bankruptcy Court and may be inspected by interested parties during regular business hours.

This Disclosure Statement has been prepared in accordance with section 1125 of the Bankruptcy Code and not in accordance with federal or state securities law or other applicable nonbankruptcy law. Entities holding or trading in or otherwise purchasing, selling, or transferring claims against, interests in, or securities of the Debtors should evaluate this Disclosure Statement only in light of the purpose for which it was prepared. This Disclosure Statement has not been approved or disapproved by the Securities and Exchange Commission nor has the commission passed upon the accuracy or adequacy of the statements contained herein.

The Honorable J. Craig Whitley will hold a hearing on confirmation of the Plan (the "Confirmation Hearing") at the United States Bankruptcy Court, Charles Jonas Federal Building, 401 West Trade Street, Courtroom 1-4, Charlotte, North Carolina on _____, 2019 at __:__ __.m. At the Confirmation Hearing, the Bankruptcy Court will consider whether the Plan satisfies the requirements of the Bankruptcy Code, including whether the Plan is in the best interests of Creditors, and will review the ballot reports concerning votes cast for acceptance and rejection of the Plan.

**C.    OVERVIEW OF THE DEBTOR AND THE PLAN**

   *1.    Description of the Debtors*

The Debtors operate as a manufacturer and distributor of electronic cigarettes and personal vaporizers. On or about September 12, 2012, Ballantyne Brands, LLC, a North Carolina limited liability Company ("Ballantyne Brands-NC") was formed as a vehicle to purchase the "Mistic"™ electronic cigarette brand. However, shortly thereafter the founding members of the North Carolina entity contributed their ownership interests to Ballantyne Brands, LLC, a Delaware limited liability company ("Ballantyne Brands-DE"). As far as can be ascertained, the North Carolina entity has never been operational, has never owned any assets, and any alleged debts of the North Carolina entity are, in reality, obligations of Ballantyne Brands-DE.

Ballantyne Brands-DE is headquartered in Charlotte, North Carolina. The company's products are sold under the Mistic™ e-cigarette and Haus™ personal vaporizer brands. All sales are direct-to-customer via the company's on-line store. The company currently employs six people, two of whom are customer service representatives, and all of its manufacturing operations are outsourced. The company licenses technology from Fontem Ventures B.V. in order to manufacture its e-cigarettes and vaporizer products (although the product names are not subject to the license agreement). For the eight months ended March 31, 2019, gross revenues of the company were approximately $3.1 million, with a gross profit margin of 61.7 percent.

## 2. *Reasons for the Chapter 11 Filings*

While the Debtors initially experienced strong sales to retail outlets, they were quickly embroiled in a series of costly, multi-year lawsuits involving disputes over sales commission payments, sales promotions, alleged contract breaches, returns of unsold product, and patent infringement. Simultaneously, customer preferences gradually shifted from e-cigarette devices to competing "vaping" products with higher nicotine content. In these years, the Debtors saw their annual sales drop from approximately $40 million per annum to approximately $5 million or less. As of 2018, with its retail sales at an all-time low, the Debtors shifted their focus to direct-to-customer marketing and sales over the internet and social media. There are relatively few competitors in the Debtors' on-line market, and many small manufacturers have been forced to cease operations altogether. This has allowed the Debtors to capture additional market share and gradually increase their direct-to-customer sales. Unfortunately, while the Debtors have been able to stabilize their operations and improve sales, their revenues remain insufficient to satisfy the substantial Claims of Creditors amassed during the business' decline from 2013 to 2017. The Debtors filed their Chapter 11 Cases to restructure their debts or to liquidate their assets as a going concern, and to streamline the settlement and payment of Claims against their Estates in a single forum as efficiently as possible.

## 3. *The Debtors' Proposed Liquidation Pursuant to the Plan*

The Debtors have concluded that a sale of their assets in a going concern auction under section 363 of the Bankruptcy Code is the fairest, most efficient means of satisfying the Claims of Creditors. With the assistance of its court-appointed financial advisor, GreerWalker, LLP, the Debtors have prepared a summary of their business, its history, the market in which it operates, and certain financial performance data (the "Business Summary"). The Debtors and GreerWalker's corporate finance section then identified certain of the Debtors' competitors, suppliers, and other industry participants likely to be interested in acquiring the companies' business (the "Targeted Marketing Pool"). The Business Summary will be provided to the Targeted Marketing Pool with a request for written offers to purchase the assets offered for sale. If offers are received, the Debtors will conduct a competitive auction and seek approval of the contemplated Sale on the terms and conditions set forth in the Bidding Procedures, which are attached to the Plan as Exhibit 1. It should be noted that the Bidding Procedures allow for credit bidding pursuant to section 363(k) of the Bankruptcy Code. The Debtors intend to file a separate motion seeking approval of the Bidding Procedures and the overall sale process, which will run concurrently with confirmation of the Plan.

In addition to any proceeds of the Sale described above, the Debtor anticipates net recoveries from Avoidance Actions of approximately $500,000, and remaining cash of approximately $250,000 from the Debtors' post-petition operations, will be available for the satisfaction of Claims on or before the Distribution Date. It should be noted that the Distribution Date is not fixed, and its occurrence may be delayed by the time necessary to resolve all Litigation Claims of the Estates. The Debtors also propose that, given its lack of assets and separate identity, Ballantyne Brands-NC be substantively consolidated and merged into Ballantyne Brands-DE and its estate for all purposes.

A description of the Classes of Claims against the Debtors' Estates and their treatment is shown in detail in Article III below. Following distributions of all Estate Cash to Creditors, the Plan contemplates that the Consolidated Debtor will be dissolved. The Debtors' financial advisor, GreerWalker, LLP, shall serve as the Liquidating Agent of the Consolidated Debtor, and will exercise autonomous, decision-making authority over the collection and distribution of the Consolidated Estate, the prosecution of Litigation Claims, and the wind-up of the company's operations generally subject to the Bankruptcy Court's supervision. GreerWalker will be compensated as Liquidating Agent upon the same terms and conditions governing its appointment as financial advisor to the Debtors.

**D.     DISTRIBUTIONS UNDER THE PLAN**

Summaries of the classification and treatment of Claims, and the distributions that holders of Claims may expect to receive under the Plan, are set forth in Article III of this Disclosure Statement below. The amounts listed are merely the Debtors' estimates based on information available as of the filing of this Disclosure Statement. The actual amounts could be substantially different, causing the ultimate distributions to creditors to be significantly higher or lower than estimated.

Creditors and other parties in interest are urged to review the contents of the Plan itself, which is attached as <u>Exhibit A</u> to this Disclosure Statement, in its entirety. To the extent that any provisions of this Disclosure Statement are inconsistent with the provisions of the Plan, the terms of the Plan shall control; provided, however, that the Confirmation Order shall control to the extent there is any inconsistency between the Plan and the Confirmation Order.

For a more detailed description, other significant terms, and provisions of the Plan, please refer to Article III below and the Plan itself.

**E.     CREDITORS ENTITLED TO VOTE ON THE PLAN**

Holders of Claim or Interests in Classes 1-6 may be or are impaired by the Plan and, as such, the Debtors are soliciting votes from holders of Allowed Claims in these Classes as set forth in Article 3 of the Plan.

The Plan will be confirmed if it is accepted by the requisite majorities of each Class of Claims entitled to vote on the Plan and all other conditions to confirmation are met by the Debtors. However, the Debtors may seek to "cram down" the Plan pursuant to section 1129(b) of the Bankruptcy Code on any Class of claimants that vote to reject the Plan. (For more information on "cram down," please refer to Article V, Section C below). The requisite majority for confirmation of the Plan by a particular Class without "cram down" is acceptance by at least two-thirds (2/3) in dollar amount and more than one-half (1/2) in number based on Allowed Claims that are actually voted.

**F.     INSTRUCTIONS REGARDING VOTING, CONFIRMATION,
        AND OBJECTIONS TO CONFIRMATION**

*1.     Voting Instructions*

Before voting, you should read this Disclosure Statement and its exhibits, including the Plan and its exhibits, in their entirety. Ballots must be received by the respective parties no later than _____, 2019. You may vote on the Plan by completing and mailing the enclosed Ballots to:

> Moon Wright & Houston, PLLC
> Attention: Richard S. Wright
> 121 West Trade Street, Suite 1950
> Charlotte, North Carolina 28202

You should use the ballots sent to you with this Disclosure Statement to cast your votes for or against the Plan. You may NOT cast ballots or votes orally. In order for your ballot to be considered by the Bankruptcy Court, it must be received at the above address no later than the time designated in the notice accompanying this Disclosure Statement. If you are a holder of a Claim entitled to vote on the Plan and did not receive a ballot with this Disclosure Statement, you may obtain a ballot by contacting Moon Wright & Houston, PLLC at the address shown above.

Only holders of Allowed Claims in impaired Classes are entitled to vote on the Plan. In addition, the record date of all Claims against the Debtors for voting purposes shall be May 28, 2019. Persons holding Claims transferred after such date will not be permitted to vote on the Plan. An impaired Class of Claims accepts the Plan if at least two-thirds (2/3) in amount, and more than one-half (1/2) in number, of the Allowed Claims in the Class that are actually voted are cast in favor of the Plan. Pursuant to the provisions of section 1126 of the Bankruptcy Code, the Bankruptcy Court may disallow any vote accepting or rejecting the Plan if such vote is not cast in good faith. A Creditor's failure to vote on the Plan will not affect such Creditor's right to a Distribution under the Plan.

If the voting members of an impaired Class do not vote unanimously for the Plan but, nonetheless, vote for the Plan by at least the requisite two-thirds (2/3) in amount of Allowed Claims in that Class and one-half (1/2) in number of Allowed Claims actually voted in that Class, the Plan, at a minimum, must provide that each member of such Class will receive property of a value, as of the Effective Date, that is not less than the amount such Class members would receive or retain if the Estate was liquidated under Chapter 7 of the Bankruptcy Code.

The Bankruptcy Court established May 28, 2019 as the deadline by which all proofs of Claim must be filed in these Chapter 11 Cases. The Debtors may dispute proofs of Claim that have been filed or that the Debtors listed as disputed in their Schedules filed with the Bankruptcy Court. Persons whose Claims are disputed may vote on, or otherwise participate in, Distributions under the Plan only to the extent that the Bankruptcy Court allows their Claims. The Bankruptcy Court may temporarily allow a Claim for voting purposes only. The Schedules, which list the Claims and whether such Claims are disputed, can be inspected at the Office of the Clerk of the United States Bankruptcy Court for the Western District of North Carolina, Charles Jonas Federal Building, 401 West Trade Street, Charlotte, North Carolina.

Whether or not a Claimant votes on the Plan, such Persons will be bound by the Plan, including the terms and treatment of Claims set forth therein, if the Plan is accepted by the requisite majorities of the Classes or is "crammed-down" and confirmed by the Bankruptcy Court. Allowance or disallowance of a Claim for voting purposes does not necessarily mean that all or a portion of that Claim will be allowed or disallowed for purposes of Distribution under the Plan.

### 2. *Confirmation of the Plan*

Once it is determined which impaired Classes, if any, have or have not accepted the Plan, the Bankruptcy Court will determine whether the Plan may be confirmed. If all impaired Classes accept the Plan, it will be confirmed provided that the Bankruptcy Court finds the other conditions set forth in section 1129(a) of the Bankruptcy Code are satisfied. These are complex statutory provisions, and the preceding paragraphs are not intended to be a complete summary of the law. If you do not understand any of these provisions, please consult with an attorney.

IF ALL CLASSES DO NOT ACCEPT THE PLAN, THE DEBTORS INTEND TO RELY UPON THE "CRAM DOWN" PROVISION OF SECTION 1129(b) OF THE BANKRUPTCY CODE.

The Bankruptcy Court may confirm the Plan, even if all of the impaired Classes do not accept the Plan, if the Bankruptcy Court finds that certain additional conditions are met. Accordingly, if the Plan is not accepted by the requisite amount of Claims in their respective impaired Classes, the Debtors will seek confirmation of the Plan as to such non-accepting Classes pursuant to section 1129(b) of the Bankruptcy Code. Section 1129(b) of the Bankruptcy Code is generally referred to as the "cram down" provision. The Bankruptcy Court may confirm a Plan over the objection of a non-accepting Class if the Plan satisfies one of the alternative requirements of section 1129(b)(2)(A) of the Bankruptcy Code. The Bankruptcy

Court may confirm the Plan over the objection of a non-accepting Class if the non-accepting members of the Class will receive the full value of their Claims, or, if the non-accepting members of the Class stand to receive less than full value, no Classes of junior priority will receive anything on account of their respective Claims.

### 3. *Objections to Confirmation*

Any objections to confirmation of the Plan must be filed with the Clerk of the Bankruptcy Court and served upon (a) Richard S. Wright, Moon Wright & Houston, PLLC, 121 West Trade Street, Suite 1950, Charlotte, North Carolina 28202; and (b) Shelley K. Abel, United States Bankruptcy Administrator, 402 West Trade Street, Charlotte, North Carolina 28202, in such a manner as will cause such objections to be filed with the Bankruptcy Court and received by the aforementioned parties no later than _____, 2019.

### 4. *Confirmation Hearing*

A hearing on confirmation of the Plan is scheduled before the Honorable J. Craig Whitley, United States Bankruptcy Judge, United States Bankruptcy Court for the Western District of North Carolina, at the United States Bankruptcy Court, Charles Jonas Federal Building, 401 West Trade Street, Courtroom 1-4, Charlotte, North Carolina, on _____, 2019 at __:__ __.m. Announcement of the adjournment or continuance of such hearing, if any, may be made in writing or in open court. No further written notice is required to be sent to claimants, interest holders, or other parties in interest.

## ARTICLE II
## INFORMATION REGARDING THE CHAPTER 11 CASE

### A. COMMENCEMENT OF THE CHAPTER 11 CASE

#### 1. *Filing of the Petition*

The Debtors filed voluntary petitions for relief under Chapter 11 of the Bankruptcy Code on January 18, 2019.

#### 2. *No Unsecured Creditors Committee or Trustee Appointed*

An Official Committee of Unsecured Creditors was not appointed in the Chapter 11 Cases. Likewise, neither a trustee nor an examiner has been appointed by the Bankruptcy Court.

#### 3. *Continuation of Business after Filing*

The Debtors have continued to manage their businesses and affairs as debtors in possession, subject to the oversight of the Bankruptcy Court. Certain actions of the Debtors during the Chapter 11 Cases, including all transactions outside of the ordinary course of business, if any, were taken only after first requesting and receiving authorization from the Bankruptcy Court. Upon the filing of the chapter 11 petitions, substantially all Claims against the Debtors that existed prior to the Petition Date became subject to the automatic stay provisions of section 362 of the Bankruptcy Code while the Debtors continued operating their businesses and affairs as debtors in possession. These pre-petition Claims may arise from the determination by the Bankruptcy Court of allowed claims for contingent liabilities and other disputed amounts.

B.  **SIGNIFICANT EVENTS DURING THE CHAPTER 11 CASE**

   1.  *Filing of Schedules*

The Debtors filed their respective Schedules of Assets and Liabilities, and their Statements of Financial Affairs (the "Schedules") on January 22, 2019.

   2.  *Retention of Professionals by the Debtor*

The Debtors are represented by the firm of Moon Wright & Houston, PLLC as bankruptcy counsel in connection with their Chapter 11 Cases.  In addition, the Bankruptcy Court appointed GreerWalker, LLP as the Debtors' financial advisor.

   3.  *Bar Date for Filing of Claims*

The Bankruptcy Court established May 28, 2019 (the "Claims Bar Date") as the deadline by which all proofs of Claim must be filed in these Chapter 11 Cases.  The Clerk of the Bankruptcy Court transmitted notices of the Bar Date to all known actual or potential claimants and informed them of their need to file a proof of Claim on or before the Claims Bar Date.

## ARTICLE III
## THE DEBTORS' PLAN OF REORGANIZATION

The following is a summary of the provisions of the Plan and, accordingly, is not as complete as the full text of the Plan that accompanies this Disclosure Statement.  The Plan itself, attached as <u>Exhibit A</u> hereto, should be read in its entirety.

A.  **SUMMARY OF PAYMENT PROVISIONS OF THE PLAN**

   1.  *Impairment of Claims*

A class of Claims or Interests is deemed "impaired" under a chapter 11 plan unless, in general, the rights of the holders of the claims or interests of such class are not altered or, with respect to interests, the holders receive cash equal to the greater of (a) any liquidation preference or (b) the redemption price, if either is applicable.  Pursuant to section 1129(b) of the Bankruptcy Code, any Class deemed to be impaired must accept the plan by the requisite majority before the plan can be confirmed, unless the Bankruptcy Court finds that the plan is fair and equitable and does not discriminate unfairly with respect to each class that is impaired and has not accepted the plan.

   2.  *Treatment of Claims*

The treatment of and consideration to be received by holders of Allowed Claims pursuant to the Plan will be in full settlement, release, and discharge of their respective Allowed Claims relating to the Debtors and other Persons, as applicable, as specified in the Plan.

B.  **CLASSIFIED CLAIMS UNDER THE PLAN**

   1.  *Classifications Generally*

The Plan divides the Claims against the Debtors into various Classes.  The table in Article III.B. below contains a description of the Classes of Claims against the Debtors and the corresponding treatment

thereof under the Plan. Allowed Administrative Claims and Allowed Priority Tax Claims are not designated as Classes of Claims for purposes of the Plan pursuant to sections 1123, 1124, 1126 and 1129 of the Bankruptcy Code.

### 2. *Option for Inclusion in Administrative Convenience Class*

Class 5, the Administrative Convenience Class, consists of all Allowed Unsecured Claims in amounts of $1,000.00 or less each. The holder of a Claim in excess of this amount my, at its option, elect to have its Claim treated in Class 5 <u>by marking the same on the enclosed Ballot</u>. The maximum amount to be distributed by the Consolidated Debtor on account of an Allowed Class 5 Claim is $1,000.00. A Creditor which elects to have its Claim treated in Class 5 will receive no other distribution except as specifically provided for the Administrative Convenience Class.

### 3. *Description of Classes and Corresponding Treatment*

A table summarizing the Classes of Claims in the Plan and their corresponding treatment follows. All amounts listed for each Class of Claims are merely estimates, and are subject to change through the Debtors' Claims review and objection process. All capitalized terms not defined herein shall have the meanings ascribed to them in the Plan.

[Remainder of Page Intentionally Left Blank]

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Allowed Administrative Claims*<br><br>An Allowed Administrative Claim is any cost and expense of administration of the Chapter 11 Cases entitled to priority in payment under §§ 507(a)(1) and (a)(2) of the Bankruptcy Code, or as may be allowed by Final Order of the Bankruptcy Court.<br><br>The Debtors estimate that, after completion of the claim reconciliation process, and excluding any cure amounts related to assumption of executory contracts and leases, the total amount of Allowed Administrative Claims will be $55,000.00. | *Not Classified Under the Plan; Unimpaired*<br><br>Except to the extent the holder of an Allowed Administrative Claim agrees otherwise, each holder of an Allowed Administrative Claim shall be paid, in respect of such Allowed Claim, the full amount thereof in Cash (or such other form as is agreed upon by any holder of an Allowed Administrative Claim) as soon as practicable after the later of (a) the Distribution Date and (b) the date on which such Claim becomes an Allowed Claim, except that Allowed Administrative Claims arising in the ordinary course of business shall, if due at a later date pursuant to its terms, be paid when otherwise due. | 100% |
| *Allowed Priority Tax Claims*<br><br>An Allowed Priority Tax Claim is any Claim that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.<br><br>The Debtors estimate that the total amount of Allowed Priority Tax Claims will be $5,541.00. | *Not Classified Under the Plan; Unimpaired*<br><br>Each holder of an Allowed Priority Tax Claim shall be paid the Allowed Amount of its Allowed Priority Tax Claim, at the option of the applicable Debtor: (a) in full, in Cash, on the Distribution Date; or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Priority Tax Claim and the applicable Debtor. | 100% |
| *Class 1: Allowed Secured Tax Claims*<br><br>Class 1 consists of all Allowed Secured Claims of any taxing authorities. For purposes of voting, each holder of a Secured Tax Claim shall be considered to be the sole member of a separate Class.<br><br>The Debtors estimate that the total amount of Allowed Secured Tax Claims will be $0.00. | *Impaired Under the Plan; Entitled to Vote*<br><br>Each holder of an Allowed Secured Tax Claim shall be paid the Allowed Amount of its Allowed Secured Tax Claim, at the option of the Consolidated Debtor: (a) in full, in Cash, on the Distribution Date; or (b) upon such other terms as may be mutually agreed upon between such holder of an Allowed Secured Claim and the Consolidated Debtor. Each holder of an Allowed Secured Tax Claim shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 1 Claim is satisfied as set forth in the Plan. | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Class 2: Allowed Secured Claim of DSC*<br><br>Class 2 consists of the Allowed Secured Claim of DSC.<br><br>The Debtors estimate that the allowed amount of the Class 2 Claim will be $7,450,648.00. | *Impaired Under the Plan; Entitled to Vote*<br><br>The collateral securing the Allowed Secured Claim of DSC shall be sold free and clear of liens, claims and interests pursuant to sections 363 and 1129(b)(2)(A)(iii) of the Bankruptcy Code pursuant to the Sale Order. Following the Closing Date, the Net Sale Proceeds attributable to the collateral securing DSC's Allowed Secured Claim shall be disbursed to DSC upon the Distribution Date in full satisfaction of DSC's allowed Class 2 Claim. Any Allowed Unsecured Deficiency Claim of DSC shall be treated as a Class 6 Claim. DSC shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 2 Claim is satisfied as set forth in the Plan. | 100% |
| *Class 3: Allowed Secured Claim of First Insurance*<br><br>Class 3 consists of the Allowed Secured Claim of First Insurance.<br><br>The Debtors estimate that the allowed amount of the Class 3 Claim will be $6,271.61. | *Impaired Under the Plan; Entitled to Vote*<br><br>The collateral securing the Allowed Secured Claim of First Insurance shall be surrendered to First Insurance on the Distribution Date in full satisfaction of the allowed Class 3 Claim. Any Allowed Unsecured Deficiency Claim of First Insurance shall be treated as a Class 6 Claim. First Insurance shall retain its liens with the priority thereof, as they existed on the Petition Date pursuant to section 1129(b)(2)(A)(i)(I) of the Bankruptcy Code until its Allowed Class 3 Claim is satisfied as set forth in the Plan. | 100% |
| *Class 4: Allowed Priority Non-Tax Claims*<br><br>Class 4 consists of all Allowed Priority Non-Tax Claims.<br><br>The Debtors estimate that the allowed amount of Class 4 Claims will be $0.00. | *Impaired Under the Plan; Entitled to Vote*<br><br>Holders of Allowed Class 4 Claims will be paid the full amount of their Allowed Priority Non-Tax Claims as of the Petition Date upon the Distribution Date. | 100% |

| DESCRIPTION OF CLAIMS AND INTERESTS AND CLASSES AND ANTICIPATED AMOUNT OF ALLOWED CLAIMS | DESCRIPTION OF PROPOSED DISTRIBUTION UNDER THE PLAN | ESTIMATED RECOVERY |
|---|---|---|
| *Class 5: Allowed Administrative Convenience Claims*<br><br>Class 5 consists of all Allowed Unsecured Claims in amounts of $1,000.00 or less each, including, but not limited to, the Allowed Unsecured Claims of those Creditors that elect to have such Claims treated in Class 5.<br><br>The Debtors estimate that the allowed amount of Class 5 Claims will be $10,000.00. | *Impaired Under the Plan; Entitled to Vote*<br><br>Holders of Allowed Class 5 Claims will be paid the full amount of their Allowed Unsecured Claims as of the Petition Date, not to exceed $1,000.00 each, upon the Distribution Date. | 100% |
| *Class 6: Allowed General Unsecured Claims*<br><br>Class 6 consists of all Allowed General Unsecured Claims in amounts greater than $1,000.00 each.<br><br>The Debtors estimate that the allowed amount of Class 6 Claims will be $19,000,000.00. | *Impaired Under the Plan; Entitled to Vote*<br><br>Holders of Allowed General Unsecured Claims will receive distributions equal to their Pro Rata Shares of the Net Estate Cash upon the Distribution Date. | 4% |
| *Class 7: Allowed Equity Interests*<br><br>Class 7 consists of all Allowed Equity Interests in the Debtors. | *Not Impaired Under the Plan; Deemed to Accept*<br><br>Holders of Equity Interests in the Consolidated Debtor will not receive or retain any property under the Plan on account of their pre-petition Equity Interests unless all senior classes are paid in full. Upon the Effective Date of the Plan, the Equity Interests in the Consolidated Debtor shall be deemed cancelled. | N/A |

## ARTICLE IV
## OTHER PROVISIONS OF THE PLAN

A.    **ADMINISTRATIVE BAR DATE**

In accordance with section 2.2 of the Plan, and except as otherwise ordered by the Bankruptcy Court (including any order providing for an earlier date), requests for payment of Administrative Claims, including all applications for final allowance of compensation and reimbursement of expenses of Professionals incurred before the Confirmation Date, must be filed and served on the Debtors no later than thirty (30) days after the Confirmation Date. Any Person required to file and serve a request for payment of an Administrative Claim and who fails to timely file and serve such request, shall be forever barred, estopped, and enjoined from asserting such Claim or participating in distributions under the Plan on account thereof. The Administrative Claims Bar Date shall not apply to fees and expenses of Professionals incurred after the Confirmation Date.

B.    **EXECUTORY CONTRACTS**

    1.    *Generally*

In accordance with § 5.1 of the Plan, as of the Effective Date, all executory contracts and unexpired leases of the Debtors that (1) have not previously been assumed or rejected by Order of the Bankruptcy Court, or (2) are not the subject of a motion to assume pending on the Effective Date, shall be deemed rejected by the Consolidated Debtor pursuant to sections 365 and 1123 of the Bankruptcy Code.

    2.    *Claims Bar Date Relating to Executory Contracts and Unexpired Leases*

In accordance with § 5.3 of the Plan and except to the extent a prior order of the Bankruptcy Court provided for an earlier date, in which case such earlier date shall control, all proofs of claim with respect to Claims arising from the rejection of executory contracts or unexpired leases shall be filed with the Bankruptcy Court within thirty (30) days after the Closing Date. Any Claims not filed within such time shall be released and discharged and forever barred from assertion against the Debtors, their Estates, the Consolidated Debtor, and the Consolidated Estate.

C.    **AVOIDANCE ACTIONS AND OTHER CAUSES OF ACTION**

The Debtors and, after the Confirmation Date, the Consolidated Debtor, shall retain all rights and are authorized to commence and pursue as they deem appropriate, any and all claims and causes of action, including, but not limited to, Avoidance Actions, whether arising before or after the Petition Date, in any court or other tribunal including, without limitation, in adversary proceedings filed in the Chapter 11 Cases, and including but not limited to, any claims and causes of action specified in the Plan. The Debtors believe that there are viable Avoidance Actions against their current or former insiders with total estimated recoveries, after litigation costs, of $500,000.

D.    **DISTRIBUTIONS**

All Distributions under the Plan will be made as outlined above and as set forth specifically in Articles 3 and 6 of the Plan.

E.  **OBJECTIONS TO CLAIMS**

Following the Confirmation Date, the Consolidated Debtor shall be authorized to object, or to succeed or otherwise join any objection filed by the Debtors prior to the Confirmation Date, to Claims so as to have the Bankruptcy Court determine the amounts to be allowed, if any, of such Claims and thus paid pursuant to the Plan (excluding Claims previously allowed by Final Order of the Bankruptcy Court). Objections to Claims shall be filed with the Bankruptcy Court and served upon the holders of such Claims no later than one hundred and twenty (120) days after the Effective Date; provided, however, that this deadline may be extended by the Bankruptcy Court. An objection to the allowance of a Claim must be filed with the Bankruptcy Court and served upon the holder of the Claim and all parties who have requested notice.

Notwithstanding the foregoing, unless an order of the Bankruptcy Court specifically provides for a later date, any proof of claim for pre-petition debts of the Debtors filed after the Confirmation Date shall be automatically disallowed as a late-filed claim, without any action by the Consolidated Debtor, unless and until the party filing such Claim obtains (i) the written consent of the Consolidated Debtor to file such Claim late, or (ii) approval from the Bankruptcy Court upon notice to the Consolidated Debtor that permits the late filing of the Claim, in which event, the Consolidated Debtor shall have 120 days from the date of such written consent or order to object to such Claim, which deadline may be extended by the Bankruptcy Court upon motion of the Consolidated Debtor. Prior to the Confirmation Date, the Debtors shall litigate to judgment, propose settlements of, or withdraw objections to such Disputed Claims asserted against them as the Debtors may choose. From and after the Confirmation Date, the Consolidated Debtor shall litigate to judgment, propose settlements of, or withdraw objections to all Disputed Claims. Prior to the expiration of thirty (30) days from the date of service of the objection, the Claimant whose Claim was the subject of the objection must file a response to the objection with the Bankruptcy Court and serve the response upon the Consolidated Debtor. If the Claimant whose Claim was the subject of the objection fails to file and serve its response to the objection within the 30-day response deadline, the Bankruptcy Court may grant the relief requested in the objection against the non-responding claimant without further notice or hearing. All proposed settlements of Disputed Claims shall be subject to the approval of the Bankruptcy Court after notice and opportunity for a hearing (as that term is used in section 102(1) of the Bankruptcy Code).

F.  **MISCELLANEOUS**

1.  *Retention of Jurisdiction*

The Bankruptcy Court will continue to retain jurisdiction after Confirmation of the Plan to resolve all outstanding matters in the Chapter 11 Cases.

2.  *Discharge*

The consideration distributed under the Plan shall be in exchange for, and in complete satisfaction, discharge, release, and termination of all Claims of any kind against the Debtors, the Estates, the Consolidated Debtor, and the Consolidated Estate. The Confirmation Order shall be a judicial determination of discharge and termination of all liabilities of and all Claims against the Debtors, the Estates, the Consolidated Debtor, and the Consolidated Estate, except as otherwise specifically provided in the Plan. On the Confirmation Date, as to every discharged Claim and other debt of the Debtors, the holder of such Claim or other debt of the Debtors shall be permanently enjoined from asserting against the Consolidated Debtor, or against its assets or properties or any transferee thereof, any other or further Claim or debt of the Debtors based upon any document, instrument, or act, omission, transaction, or other

activity of any kind or nature that occurred prior to the Confirmation Date except as expressly set forth in the Plan.

### 3. *Release of Certain Claims and Actions*

As of and on the Effective Date, all Persons or Entities who have held, hold, or may hold Claims against the Debtors, the Estates, the Consolidated Debtor, and/or the Consolidated Estate shall be deemed to have waived, released, and discharged all rights or claims, whether based upon tort, contract or otherwise, which they possessed or may possess prior to the Effective Date against the Debtors, the Estates, the Consolidated Debtor, and/or the Consolidated Estate, except as otherwise provided for in the Plan (including the documents filed as Schedules or Exhibits to the Plan) or the Confirmation Order; provided, however, that the foregoing release shall not apply to performance or nonperformance under the Plan or related instruments, securities, agreements or documents, or to any action or omission that constitutes actual fraud or criminal behavior.

### 4. *Conditions Precedent to Confirmation*

The Plan shall not be confirmed unless and until the Bankruptcy Court enters the Confirmation Order.

### 6. *Rounding*

Whenever any payment of a fraction of a cent would otherwise be called for, the actual payment shall reflect a rounding of such fraction to the nearest whole cent, with one-half cent being rounded up to the nearest whole cent. To the extent Cash remains undistributed as a result of the rounding of such fraction to the nearest whole cent, such Cash shall be treated as unclaimed property under the Plan.

## ARTICLE V
## CONFIRMATION OF THE PLAN

### A. FEASIBILITY

Section 1129(a) of the Bankruptcy Code requires a judicial determination that confirmation of the Plan will not likely be followed by liquidation or the need for further financial reorganization of the Debtors unless liquidation is contemplated under the Plan. In connection therewith, the Debtors are confident that there will be sufficient funds on hand to satisfy the minimum distributions required under Section 1129(a)(9) of the Bankruptcy Code and the obligations of the Consolidated Debtor under the Plan.

### B. ACCEPTANCE

As a condition to confirmation of the Plan, section 1129(a) of the Bankruptcy Code, with certain exceptions, requires that each impaired Class accept the Plan. In general, a Class is "impaired" if the legal, equitable, or contractual rights attaching to the Claims of that Class are modified, other than by curing defaults and reinstating maturities or by payment in full in cash. The Bankruptcy Code defines acceptance of a plan (a) by a Class of Creditors entitled to vote thereon as acceptance by holders of two-thirds in dollar amount and a majority in number of Allowed Claims in that class and (b) by a Class of equity holders entitled to vote thereon by acceptance two-thirds in amount of such interests. Each calculation, however, includes only those holders of Allowed Claims who actually vote to accept or reject the Plan.

Under Section 1126(f) of the Bankruptcy Code, classes of Allowed Claims that are not "impaired" under the Plan are conclusively deemed to have accepted the Plan. Under Section 1126(g) of the Bankruptcy Code, classes that receive no distributions under the Plan are conclusively deemed to have rejected the Plan. For these reasons, acceptances of the Plan are being solicited from all Classes impaired pursuant to the Plan, if any, other than the Class of Equity Interests.

**C.     NON-ACCEPTANCE AND CRAM DOWN**

If any Class of impaired Claims fails to accept the Plan, the Debtors will seek to affect a "cram down" on such dissenting Class and all Classes that are junior to such dissenting Class under section 1129(b) of the Bankruptcy Code. The Debtors also reserve the right to amend the Plan and request the Bankruptcy Court to confirm the Plan as further amended. If an amendment to the Plan is material, the Debtors may have to re-solicit acceptances from any Class affected by the change, unless that Class can be deemed to have accepted or rejected the Plan.

The Plan's treatment of Classes is consistent with the foregoing. Consequently, the Debtors believe that if any of the holders in Classes that are impaired reject the Plan, the Plan may be confirmed over such opposition. Pursuant to Section 1129(b) of the Bankruptcy Code, the Debtors will seek Confirmation of the Plan, notwithstanding the possible rejection of the Plan by holders of Claims in any Class.

**D.     BEST INTERESTS TEST (LIQUIDATION ANALYSIS)**

Notwithstanding acceptance of the Plan in accordance with section 1126 of the Bankruptcy Code, the Court must find that each member of an impaired Class of Creditors, if any, has each accepted the Plan, or will receive or retain property of a value, as of the Plan's Effective Date, that is not less than the amount such Creditor or interest holder would receive or retain if the Estate was liquidated under Chapter 7 of the Bankruptcy Code. The Debtors believe that the Plan complies with this "best interests" test.

To determine what Creditors would receive if the Debtors' Estates were liquidated under Chapter 7, the dollar amount that would be generated from the liquidation of the Estates' assets must be considered. The amount available for the satisfaction of Claims would consist of the Debtors' interests in the net proceeds resulting from the disposition of the Estate assets. The Estates' interest would necessarily be reduced by the amount of any secured Claims, the costs and expenses of liquidation, and such additional administrative and priority claims that may result from the liquidation of the assets. These calculations are set forth in a hypothetical liquidation analysis attached hereto as <u>Exhibit B</u>.

Conversion of the Chapter 11 Case to a proceeding administered under Chapter 7 of the Bankruptcy Code, followed by liquidation, would also involve greater expense and risk than the Sale contemplated by the Plan. For example, conversion of the Chapter 11 Case would require appointment of a trustee to conduct the liquidation of the Estates. The trustee would have limited knowledge of the Chapter 11 Cases or of the Debtors' records, assets, and former business. The fees and commissions charged by a trustee and any professionals he would hire (such as legal counsel, accountants, appraisers, brokers, and the like) would impose additional administrative costs on the Estates that will not be incurred under the Plan, and which would be paid ahead of other Allowed Claims. When coupled with the inevitable delay caused by the appointment of a trustee and his professionals, distributions to holders of Allowed Claims could be delayed for an indefinite period.

Additionally, the Debtors do not anticipate that a trustee could obtain fair market value for the assets so liquidated, but would instead recover reduced amounts arising from a "distressed" sale of the Estate property. In contrast, the Plan provides for a commercially reasonable auction of the Debtors'

assets, following a coordinated marketing effort, while the company continues to operate as a going concern. The Debtors therefore anticipate that the Sale contemplated in the Plan will yield a higher, fair market value for the assets.

The Debtors' analysis indicates that general unsecured creditors could expect to receive pro rata distributions in a Chapter 7 liquidation that are substantially less than those anticipated under the Plan. Note that Exhibit B reflects a hypothetical analysis of the Debtors' Estates. This analysis is based on assumptions that the Debtors believe to be reasonable based on the best information available. However, there are economic, legal, and other uncertainties that could change the forecasted results. Nevertheless, for the reasons described above, the Debtors have concluded that the Plan provides Creditors with recoveries that have a present value greater than the present value of distributions they would receive if the Estates were liquidated under Chapter 7.

Accordingly, the Debtors submit that confirmation of the Plan is in the best interests of Creditors and fully complies with the statutory requirements of the Bankruptcy Code.

### ARTICLE VI
### MATERIAL UNCERTAINTIES AND RISK FACTORS

Holders of claims against the Debtors and the Estates should read and carefully consider the risk factors set forth below, as well as other information set forth in the Disclosure Statement (and the documents delivered together herewith and/or incorporated by reference herein). These risk factors should not, however, be regarded as constituting the only risks involved in connection with the Plan and implementation thereof.

**A.     CERTAIN DISPUTED CLAIMS**

The feasibility of the Plan is predicated upon the levels of the Claims not being materially in excess of the amounts estimated herein and in the Plan. If such claims are substantially in excess of the estimated amounts, the Debtors' ability to satisfy their payment obligations under the Plan could be impacted. Moreover, the stated amounts of claims in each Class listed above are merely estimates based on the amounts listed on the Debtors' Schedules, the current claims register published by the Clerk of the Bankruptcy Court, and the Debtors' projections regarding the amount of filed Claims that will be ultimately disallowed. All amounts are subject to change upon the completion of the claims review and objection process by the Consolidated Debtor.

**B.     CONDITIONS TO CONFIRMATION AND EFFECTIVE DATE**

If any conditions precedent to Confirmation and the Effective Date are not satisfied, the Plan may be withdrawn and the Confirmation Order vacated.

**C.     CERTAIN TAX MATTERS**

The provisions of the Plan, including substantive consolidation of the Debtors' Estates, are not anticipated to have any material federal income tax consequences to the Debtors. The Debtors are unaware of any tax consequences implementation of the Plan may have on the holders of Claims. However, the Debtors make no representations regarding such consequences to the holders of Claims and nothing in the Plan or Disclosure Statement should be considered a representation or advice concerning such tax consequences.

# ARTICLE VII
# CONCLUSION

For the reasons set forth in this Disclosure Statement, the Debtors believe that confirmation and consummation of the Plan is preferable to all other alternatives. The Debtors thus urge all Creditors entitled to vote to accept the plan and to evidence such acceptance by returning their ballots so that they will be received by _____, 2019.

Dated: Charlotte, North Carolina
       May 17, 2019

Respectfully submitted,

BALLANTYNE BRANDS, LLC, a Delaware
limited liability company

By:      */s/ Kenneth W. Roberts, Jr.*
Kenneth W. Roberts, Jr., President


BALLANTYNE BRANDS, LLC, a North Carolina
limited liability company

By:      */s/ Kenneth W. Roberts, Jr.*
Kenneth W. Roberts, Jr., President